UNITED STATES of America

v.

James G. **MARTIN.**

Crim. No. 66-042.

United States District Court
W. D. Pennsylvania.

May 26, 1966.

Albert Martin, Pittsburgh, Pa., for defendant James G. Martin.

James P. McKenna, Jr., Asst. U. S. Atty., for the United States.

### OPINION

DUMBAULD, District Judge.

Pittsburgh police obtained a duly issued warrant for the arrest of one Joyce Hammond on a narcotics charge. They also obtained a search warrant for her house. Later, during a trial in State court, it was found that the officer's af-

fidavit to the search warrant was missing.

In the case at bar the magistrate who had issued the warrant testified that it was his invariable practice not to issue a search warrant unless an appropriate affidavit was submitted. The officer testified that he had submitted the affidavit, and had also orally stated to the magistrate the same facts which were in the affidavit.

The officers proceeded to Joyce Hammond's house where her common-law husband, an addict, admitted them. She was not home. They waited for her to return. Meanwhile the defendant in the case came to the house, pursuant to an invitation from Joyce Hammond's husband. It was planned that they should indulge in narcotics together at the house. Defendant was to bring the narcotics, as in Wimpy's duck dinners in the comics of an earlier generation.

When defendant knocked, a police officer opened the door, and recognizing him, said "Hello, Gates". Defendant then ran forward, throwing into a dark pantry on his left an object, which was retrieved by the police officer who had opened the door. He handed the material to a federal narcotics officer who was present, and who said "That's junk" (narcotics) to Sergeant Stack, who thereupon informed defendant he was under arrest and searched him. The search revealed narcotic cigarettes.

What had been thrown in the pantry were two pieces of aluminum foil and five capsules of narcotics in truncated toy balloons, it being the testimony of Sergeant Stack that it is usual for narcotics to be handled in this manner, to facilitate prompt swallowing thereof in case of emergency.

Defendant now seeks to suppress all this evidence, both that from the pantry and that from his person.

It is argued that the whole course of events was unlawful because of the absence of the affidavit to the original search warrant. It is contended that the oral testimony of the officer can not be accepted as equivalent of the affidavit.

We find it unnecessary to decide this question, though it would seem that on principle probable cause, like other facts in litigation, could be proved by oral as well as documentary evidence. The possibilities of abuse by fabrication would be a matter for consideration on a case by case basis as a matter of the weight of the evidence.

It is not necessary to pass upon the validity of the search warrant, since it seems clear that without regard thereto the officers were legitimately present in the house by reason of their task of executing the *valid arrest warrant* for Joyce Hammond.

■ There may be some uncertainty as to the exact chronological sequence of events as to whether Sergeant Stack stopped defendant in his flight before or after it had been determined that the material thrown in the dark hall was narcotics. Defendant ran in a direction where his path was obstructed by the presence of Sergeant Stack. In any event it is clear that the evidence found on defendant's person was not discovered until after the federal man had identified the material from the pantry as narcotics. So this evidence is untainted and can not be suppressed.

■ With regard to the material from the pantry itself, Sergeant Stack definitely testified that at the moment when it was thrown away by defendant he recognized it as being the familiar balloon type container used for transporting narcotics, and thereupon he arrested and searched the defendant.

Sergeant Stack impressed the Court as an experienced, thoughtful, and reliable officer who testified in an apparently truthful and straightforward manner. Even if all the *res gestae* are not regarded as parts of a single transaction, we would accept the testimony of this witness as truthful (although actually it is not contradicted; the only inference against it would be the assumption that

a police officer might instinctively stop a fleeing person without regard to whether he was carrying narcotics).

Accordingly the motion to suppress evidence must be denied.

This opinion shall be deemed to contain the Court's findings of fact and conclusions of law.